## JOSEPH MOORE *versus* CHARLES THOMPSON.

If an agent for selling goods, with authority to take money only, shall sell his own goods and those of his principal, in one and the same sale, receiving payment in money and in other sorts of property, his principal is bound by the sale, provided the money received amounted to the value of his goods.

The money, or enough of it to pay for the goods of the principal, is considered to have been received for him.

This results, (in the absence of controlling proof,) from the presumption, that an agent conducts faithfully.

Though an agent, having authority to sell the goods of his principal, should, when fraudulently selling his own goods, for the purpose of defrauding his creditors, sell in his own name with them, the goods of his principal, such fraud could give to the principal no authority to rescind the sale.

ON EXCEPTIONS from *Nisi Prius*, WELLS, J. presiding.

The evidence tended to show the following facts, viz : — John M. Thompson was a trader in goods at retail. At a time when his stock of goods was small, the plaintiff purchased them, and authorized him by a sealed power of attorney to sell them for him. Said John M. Thompson soon afterwards purchased goods on his own account, which he placed for sale in the same store with the plaintiff's goods. About a year and a half after the plaintiff had made his said purchase, a

paper was given to the plaintiff on December 27, 1842, and signed by said John M. Thompson, showing a further arrangement between him and the plaintiff, and stating that he was to sell the plaintiff's goods for cash or produce.

On May 23, 1843, John M. Thompson, in his own name, sold all the goods in the store, (comprising his own and the plaintiff's goods,) to the defendant, who paid him therefor some money and some other property, and the residue by his notes. The money payment exceeded the value of the plaintiff's part of the goods.

The defendant kept the goods in the same store, and traded upon them until June 9, 1843, when he mortgaged the whole to one McIntire.

There was testimony tending to show that the sale by John M. Thompson was made for the purpose of defrauding his creditors.

This action is in assumpsit.

The Judge instructed the jury that, inasmuch as the plaintiff did not claim to recover of the defendant on the ground of a sale of the goods from him to the defendant by his agent, but on the ground that his property had gone into the hands of the defendant without his authority or consent, and that the defendant had converted his goods into money; if they found that John M. Thompson received in payment, toward all the goods which he sold to the defendant, a sum equal to the amount of the plaintiff's goods, then the plaintiff could not recover, because said John M. Thompson was authorized to sell the goods for cash or produce, and if he did receive as much cash as to the amount of the plaintiff's goods, which he sold to the defendant, the plaintiff was bound by such sale, though made in the name of John M. Thompson.

The plaintiff contended that said John M. Thompson had no authority to sell said goods except at retail. But the Judge instructed the jury, that he was authorized to make an entire sale of the whole at one and the same time and to the same person, provided he sold for cash or produce.

The plaintiff further requested the Judge to instruct the jury that, if the sale from John M. Thompson was fraudulent, the plaintiff would not be bound by such sale, and may recover for so many of his goods as defendant had sold for money, or money's worth. But the Judge declined to give said instruction.

Exceptions were taken by the plaintiff.

*May,* for the plaintiff.

The instruction was erroneous, because it assumed that John M. Thompson was authorized to include the plaintiff's goods in and with a sale of his own goods, provided he received as much pay in money, as the value of the plaintiff's goods.

This must be upon the ground that the law would appropriate the money to the payment of the plaintiff's goods. But it is contended that, if the sale to the defendant was a valid sale, then the plaintiff would have an interest in the money, lumber and notes, taken in the same proportion that his goods bore to Thompson's. This was an *entire* sale; and the payment was an entire payment.

John M. Thompson did not profess to make the sale by virtue of any authority from the plaintiff. He repudiated the plaintiff's claim, and set up his own ownership. Shall the purchaser now shield himself from liability to the true owner, by setting up an agency which the agent himself disclaims, and did not profess at the time of the sale?

John M. Thompson had no authority to sell the goods, except at retail. It was not the intention of the parties that he should make an entire sale; but the Judge ruled that he was authorized to make an entire sale of the whole at once and to the same person, provided he sold for cash or produce.

If we look at the language of the agreement, in itself considered, perhaps it would bear this construction; but when we look at the circumstances, under which the agreement was made, and the position of the parties, we contend that it should have been left to the jury to say, from the contract and

the circumstances, what was the meaning and intention of the parties. The jury might well have found that the intention was to have the goods sold in the usual course of country trade. At any rate, it was a fact for the jury.

The Judge should have instructed the jury, as requested, that, if the sale from John M. Thompson was fraudulent, the said John M. Thompson had no right to make such a sale, and having made it, the plaintiff had a right to recover for so many of his goods as were included in such sale, and had been converted by the defendant into money or money's worth. There is no evidence in the case that the plaintiff ever, in any way, ratified such sale. It was made without his knowledge or consent. The agreement cannot be construed as authorizing any sale but an honest one, and for lawful purposes. If, therefore, John M. Thompson took the goods of the plaintiff, and uniting them with his own, made *one entire* sale, and that sale was for an unlawful purpose, shall either of the guilty parties to such sale, even if the goods were *paid for* in a manner authorized by the terms of the contract, be permitted to set up such a sale as against the true owner? In other words shall an unconsenting party be bound by a fraudulent sale, made by a recreant agent, even though such agent receive a sort of pay, which the owner would have approved, if the sale had been honest?

A fraudulent sale is in law a void sale; and the only reason why a fraudulent vendor cannot repudiate such a sale, as against the purchaser, is that he is *particeps fraudis,* and cannot allege his own turpitude, to vitiate the sale; but in this case the plaintiff is no party to the fraud; he is not therefore estopped to set aside the sale and maintain an action of trover for his goods, or assumpsit if they have been converted to money or money's worth. Chitty on Con. p. 222 and 227, and cases there cited.

A sale fraudulent as to creditors is, by statute, chap. 161, sect. 2, a crime; and can a man who may be indicted and punished for being a party to such a sale, enforce it as against

Moore *v.* Thompson.

the owner of the goods, who was not even a party *in name* or *in knowledge* to the sale ?

*Clifford* and *Appleton,* for the defendant.

1. John M. Thompson had the right to sell. This is admitted.

2. He was not restricted as to the quantity he might sell at any one time.

His authority was in writing, and to the written instrument reference must be made for its extent. In this it appears that he was empowered to sell for *cash* or *produce.* If he sold for cash or produce, he did all that was required of him. To whom he should sell, or how much to any individual, the principal did not see fit to prescribe.

If reference is had to the *subject matter* of the power, the authority is still more clear. The object was to close up the old concern of Moore & Thompson. This was best accomplished by an early and general sale of the goods.

The case finds that he received from the defendant, at the sale, more money than the value of all Moore's goods, which he sold ; and under these circumstances the sale was clearly valid.

If he had no right to sell said remnants but for cash, he shall be presumed to have received the cash on account of that portion of the goods.

3. The sale is affirmed by this form of action.

If the plaintiff did not mean to waive the alleged *tort,* he should have brought trover or trespass. In assumpsit he cannot recover for an unlawful appropriation of his property unless he waives the wrong. *Allen* v. *Ford,* 19 Pick. 217.

Not only too, must he waive the *tort,* but he must show, that the goods for which he claims, have been converted into money by the defendant. *Ibid,* and cases there cited ; *Jones* v. *Hoar,* 5 Pick. 290.

In this case, there is no proof that the goods have been converted into money by defendant, *or money's worth.*

4. Moreover, the question "whether said defendant was a *bona fide* purchaser of said goods," was submitted to the jury.

So the case finds, and the jury, therefore, have negatived the fraud alleged.

WELLS, J. — The plaintiff contended that his agent, John M. Thompson, had no authority to sell his goods to the defendant in the manner in which the sale was effected, and so far as they had been converted into money by the defendant, he had a right to recover, although the defendant had paid the agent for them. The authority to sell was denied upon the ground, that it was made by an entire sale of the whole stock at one time and to the same person. The power to make it in that mode must depend upon the language used in the instrument by which the authority was given. The contract between the parties of Dec. 27, 1842, provides that the agent is "to sell said goods for cash or produce," &c. There is nothing in it that requires they should be sold at retail or to different persons, and no terms employed from which such inference can be drawn. The mode of selling is left altogether to the agent. If it had been intended to restrict the mode of sale, the intention should have been expressed in the contract. The agent sold a large amount of his own goods with those belonging to the plaintiff, but received in money a sum equal to the value of the plaintiff's goods. It is contended in argument that the money ought not to be considered as having been paid for the plaintiff's goods, but in part for the price of all the goods sold, and that the sale was authorized only to the extent of the plaintiff's proportion of the money received. No such question was raised at the trial, but if it did arise properly, the position is not admitted to be correct. In the absence of all proof to the contrary, the presumption would be that the agent acted properly, and that the money was received for the goods of his principal, and not for his own. But if payment had been made in part only for the plaintiff's goods, that circumstance would not enable him to recover in this action; for denying the right of the agent to sell, he claimed on the ground that the defendant had obtained possession of his goods and had converted them into money. He could only recover so

far as the defendant had realized money from them, and it does not appear.that he had sold them for money, or that he had sold them at all. It is not shown that the defendant sold any of the goods which had belonged to the plaintiff between the 23d of May and the 9th of June, 1843, while he was in trade, nor was the mortgage of the goods to Eliab P. McIntire a conversion of them into money. The goods would be released from the mortgage by the payment of the debt, and the mortgager would be entitled to them. There is not evidence in the case upon which to base an instruction that, it is contended in the argument, should have been given.

The plaintiff further contends that the sale to the defendant was made by John M. Thompson to defraud his creditors, and therefore it is void as to him, and he has a right to regard it as if it had not been made. But the sale was valid between the parties to it, and as to all other persons who were not prejudiced by it. The plaintiff does not claim the goods sold as a creditor or purchaser. The only fraud that could have been committed, if there were any, was in relation to the agent's own goods, and it could not in the least degree have affected those belonging to the plaintiff. Because the plaintiff's goods were sold with the agent's, and the agent intended to defraud his creditors in the sale of his own goods, no detriment could possibly accrue to the plaintiff. If the agent did not transcend his power, and sold the plaintiff's goods for cash or produce according to the authority given him, the plaintiff has no reason to claim any thing of the defendant. No third person can impeach the validity of a sale made to defraud creditors unless it operates as an injury to him.

There does not appear to be any error in the instructions given, and the requested instruction was properly withheld.

*Exceptions overruled and judgment on the verdict.*